Jean Duncan Administrative Officer Kansas Real Estate Commission Three Townsite Plaza, Suite 200 120 S.E. 6th Avenue Topeka, Kansas 66603-3411
Dear Ms Duncan:
As administrative officer for the Kansas real estate commission, you ask our opinion regarding the applicability of certain exemptions from the real estate broker and salesperson licensure requirement.
You inform us that water district no. 1 of Johnson county is currently planning water main projects. The district intends to contract with a company to appraise property along the routes. In addition, company employees would negotiate on behalf of the water district with affected property owners to acquire temporary and permanent easements. You ask whether these negotiators are required to be licensed as real estate brokers or salespersons in order to perform this work.
A person who negotiates or offers, attempts or agrees to negotiate the sale, exchange, purchase or leasing of real estate is required to be licensed as a broker, associate broker or salesperson. K.S.A. 1992 Supp.58-3035, as amended by L. 1993, ch. 241, § 1; K.S.A. 1992 Supp. 58-3036. Exemptions to this requirement, found at K.S.A. 1992 Supp. 58-3037, include:
 "(e) Any officer or employee of the federal or state government, or any political subdivision or agency thereof, when performing the official duties of the officer or employee."
and
 "(h) Railroads or other public utilities regulated by the state of Kansas, or their subsidiaries, affiliated corporations, officers or regular employees. . . ."
You ask whether either of these exemptions are applicable to the situation you describe.
We assume that water district no. 1 of Johnson county was organized pursuant to the water supply and distribution district act, K.S.A. 19-3501et seq. and amendments thereto. As such the water district is considered both a political subdivision of the state of Kansas and a public utility regulated by the state of Kansas. K.S.A. 19-3501(e). See also Attorney General Opinion No. 93-142.
The question posed is whether the company-employed negotiators may be also considered employees of the water district and thus exempt from the licensure requirement. If the company itself is considered to be an "employee" of the water district, the company's employees may also be considered to be employees of the water district. However, if the company stands in relation to the water district as an independent contractor, the company's employees are merely employees of the company and not also of the water district. An examination of the employer/employee relationship and of the independent contractor relationship is in order.
 "In law, the term `master and servant' indicates the relationship which exists when one person who employs another to do certain work exercises the right of control over the performance of the work to the extent of prescribing the manner in which it is to be executed. The employer is the master, and the person employed is the servant. The words `employer' and `employee' are the outgrowth of the old terms `master' and `servant'; they have been adopted by reason of the shift of the relation in general from a personal to an impersonal one, and are the terms now commonly used to describe the relationship.
. . .
 While it is said that at comon law there are four elements which are considered upon the question whether the relationship of master and servant exists — namely, the selection and engagement of the servant, the payment of wages, the power of dismissal, and the power of control of the servant's conduct — the really essential element of the relationship is the right of control, that is, the right of one person, the master, to order and control another, the servant, in the performance of work by the latter, and the right to direct the manner in which the work shall be done. It is, moreover, essential that the master shall have control and direction not only of the the employment to which the contract relates, but also of all of its details and the method of performing the work, and if these elements of control and direction are lacking, no relationship of master and servant exists. It is the element of control of the work that distinguishes the relationship of master and servant from the independent contractor relationship, for the most important test in determining whether one is employed to do certain work as an independent contractor or a mere servant is the control over the work which is reserved to the employer." 53 Am.Jur.2d Master and Servant, § 1, 2 (1970)
This theme of control is further explained in a discussion of the meaning of the term "independent contractor":
 "There are many definitions of the term `independent contractor.' One of the most frequently stated is to the effect that an independent contractor is one who, in exercising an independent employmnent, contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the product or result of his work. An independent contractor has also been defined as one who carries on an independent employment in pursuance of a contract by which he has entire control of the work and the manner of its performance; as one who contracts to do a specific piece of work, furnishing his own assistants and executing the work in accordance with either entirely his own ideas or a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter with respect to the details of the work; . . .
 "Examination of the definitions substantially adopted by most of the courts makes it evident that one of the basic elements of the independent contractor relationship is the fact that the contractor has an independent business or occupation. Accordingly, very broadly speaking, where an employer may prescribe what shall be done, but now how it shall be done or who shall do it, the person employed is an independent contractor. The fact that the work is to be done under the direction, and to the satisfaction of, a person representing the employer does not render the person contracting to do the work a servant." 41 Am.Jur.2d Independent Contractors, § 1 (1968)
Based on the limited facts presented, we assume that the company operates as an independent business and not as an arm of the water district. We also assume that the water district prescribes what is to be done, i.e. negotiate for temporary and permanent easement, but that the company decides how it shall be done and by whom. If these assumptions are correct, the company stands as an independent contractor in relation to the water district and a person employed by the company to engage in negotiations is merely a company employee and not an employee of the water district. Accordingly such person is required to be licensed as a broker, salesperson or associate salesperson in order to negotiate for easments on behalf of the water district.
We are mindful of Attorney General Opinion No. 86-111 which concluded that an auctioneer employed by a sheriff to conduct a tax foreclosure sale is exempt as an employee of a political subdivision pursuant to the statutory exemption then found at K.S.A 58-3037(e). There the sheriff, as an officer of a political subdivision of the state, directly employed the auctioneer to carry out a duty of the sheriff in accordance with a specific statutory procedure for conducting tax foreclosure sales. The auctioneer, as an employee of the sheriff, was considered an employee of a political subdivision and thus exempt from the licensure requirement.
We are also aware of an informal opinion dated May 19, 1992, based on Attorney General Opinion No. 86-111, which concluded "that the exemption set forth at K.S.A. 58-3037(e) permits an advisor to perform unlicensed real estate assistance activities on behalf of KPERS." There the advisor (O'Connor and Company) was a company with which KPERS contracted; the company employed its own employees who undertook certain activities on behalf of KPERS. In our informal opinion we stated that "the situation addressed in Attorney General Opinion No. 86-111 is sufficiently analogous to the KPERS and O'Connors' relationship," i.e. an employer/employee relationship. However, the requester was asked to note that the opinion was informal and therefore "not researched or considered to the extent necesary to issue a formal opinion."
Based on more thorough research of the issue, it is our opinion that the water district/company relationship (as well as the KPERS/O'Connor relationship, the subject of the 1986 informal opinion) is probably that of independent contractor, not of employer/employee. If so, persons employed by the company are employees of an independent contractor, not employees of the water district. To the extent the conclusion reached herein does not conform to that of the informal opinion, we disaffirm that earlier informal opinion.
In conclusion, based on the facts presented and assumed, it is our opinion that a company which contracts with a water district to negotiate easements stands in relation to the water district as an independent contractor. A person hired by such company is thus a company employee and not a water district employee. Accordingly, such person does not fall within the real estate broker and salesperson licensure exemption for an employee of a political subdivision of the state of Kansas or the exemption for an employee of a public utility.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Camille Nohe Assistant Attorney General
RTS:JLM:CN:bas